RAPHAEL WEILL & CO. *v.* UNITED STATES

**No. 5935.**—Invoice dated Paris, France, August 25, 1938.
Entered at San Francisco, Calif., September 21, 1938.
Entry No. 2501.

(Decided September 29, 1943)

*Lawrence & Tuttle (George R. Tuttle* of counsel) for the plaintiff.
*Paul P. Rao,* Assistant Attorney General (*William J. Vitale,* special attorney), for the defendant.

CLINE, Judge: This is an appeal for a reappraisement involving the value of infants' dresses, wool wearing apparel, handkerchiefs, embroidered wool wearing apparel, corsets and wearing apparel made of feathers which were exported from France on August 25, 1938, and were entered at the customhouse at San Francisco on September 21, 1938. The merchandise was entered at the invoice values with an addition of an amount equal to 8.7 per centum of the invoice value to meet advances made by the appraisers on entry 1505 of August 9, 1937, at Los Angeles, entry 10443 of April 15, 1937, at San Francisco and entry 832232 of March 8, 1937, at New York. The amount was added by the appraiser in the test cases to cover a tax imposed on merchandise by the French Republic.

It is claimed that this amount added on entry by the plaintiff is not a part of the dutiable value of the merchandise and that the court

should hold that the invoice unit values plus the packing are the export values of the goods and that the foreign values are no higher.

The record shows that the principal evidence relied upon by the plaintiff is contained in a statement which was evidently placed on the invoice by means of a rubber stamp, reading as follows:

I hereby certify that merchandise the same as or similar to that described in this invoice is freely offered for sale in France and is ordinarily sold for home consumption to purchasers classified for the purposes of the French fiscal reform law as "producers." That the prices at which such sales made to "producers" on the date of exportation are no higher than the invoice prices.

Mr. Patrick B. Devine was called as a witness by the plaintiff. He testified that at the time of the instant importation he was the examiner who examined the goods and also that he was the acting appraiser; that he appraised the merchandise on the basis of foreign value; that at the time of appraisal he did not have any knowledge as to whether the above-quoted statement on the invoice was true or not true. He said, "I had no reason to doubt that statement at that time." The witness was asked and answered the following question:

Q. At the time of appraisal, did you have any knowledge as to the price at which merchandise such as is covered by this invoice was sold in France for home consumption to purchasers other than producers?

\* \* \* \* \* \* \*

The WITNESS. At that part of the importation I cannot say positively I did. I know I had information on particular items on this invoice, but I do not know whether it was at the time of this importation or not. Now, we have quite a few pages of it on the invoice, which I had some information on at some time or other. But, I cannot say whether I had it at the time of importation of this merchandise. There is nothing to show that I used that information.

On cross-examination the witness testified that he did not appraise the merchandise at the invoice value but that the unit invoice value plus the tax was the appraised value; that at the time of appraisal he saw the above-quoted statement on the invoice and he had reason to inquire as to the truth of the statement because it was a duress entry. When asked if he felt that he performed his duties properly at the time, he answered; "I think I tried to."

On redirect examination the witness testified that he was not aware at the time of appraisal that instructions had been issued directing appraisement without taxes in cases such as this, except where he doubted the truthfulness of the statements.

Two other witnesses were called by the plaintiff but their testimony did not relate to the issue in the instant case.

The defendant offered in evidence without objection the records in *W. J. Byrnes & Co. v. United States*, 3 Cust. Ct. 553, Reap. Dec. 4631, and *Associated Merchandising Corp. v. United States*, 5 Cust. Ct. 604, Reap. Dec. 5050.

In *W. J. Byrnes & Co.* v. *United States, supra,* the merchandise consisted of a lace tablecloth and napkins imported from France. The plaintiff introduced in evidence six reports of customs agents relating to an investigation regarding the scope of the French Fiscal Reform Bill which went into effect on January 1, 1937. As the reports related to the customs agent's construction of the law and quoted only portions of the statute, the court held that the plaintiff had not overcome the presumption of correctness attaching to the appraiser's return.

In *Associated Merchandising Corp.* v. *United States, supra,* the testimony of Edouard Leon, taken by deposition before the vice consul of the United States at Paris, France, was introduced in evidence. The witness attached to his deposition two printed copies of decrees by the President of the French Republic, marked A and B, dated December 31, 1936, and January 27, 1937. Translations of these documents into the English language were furnished. The appeal was abandoned by the plaintiff after the introduction of the testimony and the appeal was dismissed by the judge presiding at the trial.

Exhibit A of the *Associated Merchandising Corp.* case contains a complete translation of the law in force at that time, together with a copy of the report of the Minister of Finance explaining the provisions of the law. On page 11 the following appears:

Decrees:

A.—Sole tax of 6%

Article 1.—Subsection 1.—The following are subject to the 6% tax:

1. Producers or manufacturers and dealers who are at the same time producers or manufacturers, when the yearly amount of their sales of products or articles manufactured by them exceeds 300,000 Francs;

2. Dealers having assumed the character of producer or manufacturer under the conditions stipulated in Article 17 of this decree.

Subsection 2.—The artisans, as well as the producers contemplated in paragraph 1 of Article 9 of this decree, shall also be permitted to assume the position of producers who are subject to the sole tax of 6%, when they sell to other producers or when they export.

Subsection 3.—There are exempted from the 6% tax:

(a) Artisans as defined in Article 23 of the General Direct Tax Code who have not assumed the position of producers.

(b) Persons who perform acts which would be performed in occupations subject to the tax on agricultural profits.

Art. 2.—Subsection 1.—The taxpayer is the final producer, manufacturer or transformer, that is to say, the one who imparts to the raw material or to the semi-finished product which he has purchased its final form of finished product, in which it is directly or indirectly sold to the consumer for his use or consumption.

Subsection 2.—There are delivered with suspended tax collection products sold to a producer for resale either as is or after transformation, as well as the products destined to be consumed in the first use in the course of manufacture.

On page 16 there is a provision which shows how the tax shall be shown on the invoices:

Article 5.—The 6% tax must in no case be added on the invoice to the price agreed upon between the parties; the invoice shall read as follows:

Price_____Francs
(Tax collected for the Treasury).

Section B of the law shows that some merchants pay a tax of only 2 per centum. On page 20 appears the following:

B. 2% Tax.—Article 9. The following are subject to the 2% Tax:

1. Producers or manufacturers and dealers who at the same time are producers or manufacturers when the annual amount of their sale from products or objects manufactured by them does not exceed 300,000 Francs, the tax being due only by these taxpayers on the amount of the said sales.

2. Persons carrying on the operations mentioned in Paragraphs 1, 3, 4, 5, 6, 7, and 8 of Article 5 of the Law of December 31, 1936.

The document contains 60 pages of typewritten matter but it is deemed unnecessary to lengthen this decision by quoting further provisions. In explaining the decree to the President, the Minister of Finance said at page 1 of the document:

The creation of the new tax implies an important change of fiscal legislation. The reform eliminates the tax on business turnover subject to successive levies, which affected most of the manufacturers and dealers (businessmen) and brought about as a consequence, a control applied to a great number of taxpayers; it also eliminates almost all the sole taxes already created, which complicated legislation by the differences in their rates and the diversity of their regulation. For a complicated taxation system, the new law substitutes a general tax, the rate of which is the same irrespective of the merchandise taxed, which tax is collected once for all at the time the finished product is sold by the producer.

Exhibit B, which is dated April 29, 1937, is a translation of a document entitled "Decree Codifying the Text of Laws Concerning Taxes at the Source." It is a decree of the President of the French Republic relating to the same taxes of 6 per centum and 2 per centum described in exhibit A. Certain products are excluded from the field of application of the tax, but the articles covered by this appeal are not within the list of excluded merchandise.

The customs agents' reports in the *W. J. Byrnes & Co.* case, *supra*, have been carefully examined and it seems that the application of the law was so confused that even the customs agents could not definitely determine the scope and extent of the tax law with reference to all kinds of merchandise exported to the United States. At any rate, there is nothing in those reports relating to the assessment of taxes or exemption from taxes of merchandise like that herein involved.

The rate of tax shown by the decrees above described is 6 per centum on merchandise sold by producers doing a business of 300,000 francs per year. It is shown by exhibit 4 in the *W. J. Byrnes & Co.* case, *supra*, that "effective July 12, 1937, the production tax of 6% was raised to 8%." This does not explain the addition on the entry

herein involved of 8.7 per centum, but counsel for the plaintiff states in his brief that the tax was subsequently raised to that percentage. Counsel for the plaintiff argues in his brief as follows:

The appraisement was "the unit value on the invoice plus tax" (R. 47), and as established by the invoice statement this unit value was at least as high as the price at which such merchandise was freely offered to "producers." Therefore, in taking this value plus tax, the appraiser could not have used the freely offered price to "producers," and it must be presumed that he proceeded upon one of the following theories:

(1) That producers or manufacturers sold such or similar merchandise to consumers at the invoice price plus tax, or

(2) That producers or manufacturers sold such or similar merchandise to "dealers for resale as is," at the invoice price plus tax, or

(3) That producers or manufacturers sold such or similar merchandise to both classes of purchasers at the same price, namely, the invoice price plus tax.

As to these alternatives it would appear that the court may take judicial notice that sales *to consumers* of infants' dresses, cotton wearing apparel, wool wearing apparel, rayon articles, silk napkins, handkerchiefs, appliqued wearing apparel, knit outerwear, embroidered wool wearing apparel, and corsets, are sales at retail, and are not sales in wholesale quantities.

The court cannot take judicial notice of things which are not of common knowledge, and, therefore, cannot find that the sales by producers in France were sales at retail. The law contained in the exhibits heretofore mentioned establishes that the so-called sole tax imposed by the French Government was assessed on merchandise sold by producers unless one producer sold goods to another producer, in which case the tax on the merchandise sold by the first producer was suspended and the last producer handling the goods had to pay the tax at the time of subsequent sale of the goods. The tax was not assessed on articles or materials sold *to producers* but was imposed on the articles sold *by producers*. There is nothing in the record tending to show that the producers did not sell goods in wholesale quantities in France to other purchasers. Therefore, if the statement on the invoice is given all the weight to which the plaintiff claims it is entitled, it does not show the value at which the merchandise was freely offered for sale in wholesale quantities to *all purchasers* in France "for home consumption" within the meaning of that phrase in section 402 (c) of the Tariff Act of 1930 as amended by section 8 of the Customs Administrative Act of 1938.

There is nothing in the record in the instant case tending to show that the tax was not included in the foreign value of the merchandise, and, as it is not necessarily included in the export value of the goods, in accordance with the provisions of section 402 (a) (1) of the act, appraisement must be made at the foreign value which is apparently higher than the export value.

The plaintiff claims further that there is no foreign value for goods when merchandise is not sold at one price to all purchasers and that,

accordingly, the goods in this case, which are sold in France at different prices depending on the status of the purchaser, are dutiable at the export values thereof which are the invoice prices. This claim is apparently unfounded. Such a situation existed in *United States* v. *Mexican Products Co.*, 28 C. C. P. A. (Customs) 80, C. A. D. 129, and the court held that the merchandise was dutiable at the highest price in wholesale quantities that anyone paid in the country of exportation. The court quoted the following excerpt from *United States* v. *American Glanzstoff Corp.*, 24 C. C. P. A. (Customs) 35, T. D. 48308:

> The expression "all purchasers" does not mean the members of some association only, or 99 per centum of the purchasers of such goods, or those who would not thereafter buy such goods from someone else, but it does mean all of those who cared to buy such goods in such markets.

Counsel for the defendant argues at length in his brief that the court should not consider the testimony of the appraiser because such officer cannot be questioned with respect to the methods he used in making the appraisement, citing numerous cases in support of that contention. An examination of the record shows that the appraiser testified to facts and did not answer any questions relating to the *method* he used in arriving at the appraised values or what influenced or controlled his mental processes in arriving at the final result.

In the appraisement in this case, the appraiser must have considered that the tax was a part of the foreign value of the merchandise because the appraised value includes the tax, and, as the record shows that such a tax was assessed by the Republic of France on merchandise sold in its markets by producers, the plaintiff had the burden of proving that the tax was not assessed on the particular kind of merchandise covered by this appeal. No evidence was produced on that point. As the appraiser's return has the presumption of correctness and no evidence was produced to show that it was erroneous, I find that the articles are dutiable on the basis of foreign value and hold that such value is the appraised value. Judgment will be entered accordingly.